568-06/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LOSINJKA PLOVIDBA,

                              Plaintiff,

    -against-

AZELIE CORPORATION and CARGOBULK
PTE LTD.,

                        Defendants.
----------------------------------------------------------x

06 CIV 13627 (LAP)

## PLAINTIFF'S FIRST SUR-REPLY MEMORANDUM OF LAW IN RESPONSE TO CARGOBULK'S ARGUMENTS CONCERNING THE SECOND CIRCUIT'S DECISION IN *REIBOR*

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff Losinjka Plovidba
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/275778.1

## PRELIMINARY STATEMENT

Plaintiff LOSINJPLOV respectfully submits this sur-reply memorandum of law in further opposition to the motion by Defendant CARGOBULK to vacate the attachment in this matter with respect solely to the issues raised by CARGOBULK concerning validity of the attachment in light of the Second Circuit's decision in Reibor International Ltd. v. Cargo Carriers (KACZ-Co.) Ltd., 759 F.2d 262 (2d Cir. 1985). This Sur-Reply is submitted pursuant to agreement of the parties as authorized by the Court pursuant to the letter endorsed Order of December 21, 2006 as modified on January 9, 2007. A second sur-reply, should it be necessary, will be submitted on or before January 18, addressing the remaining issues raised by CARGOBULK in its reply of January 3.

## THE FUNDS WERE PROPERLY RESTRAINED

CARGOBULK argues that the restrained funds constitute "after acquired property" and should therefore be released. In this regard, CARGOBULK misplaces reliance on the rule of Reibor International Ltd. v. Cargo Carriers (KACZ-Co.) Ltd., 759 F.2d 262 (2d Cir. 1985). The facts of this matter bear no resemblance to the facts of Reibor, and accordingly CARGOBULK's arguments in this regard should be rejected and the attachment should be maintained.

In Reibor, the plaintiff served a bank with a Process of Maritime Attachment and Garnishment ("PMAG") at a time when the bank did not have property of the defendant. Funds of the defendant subsequently were received by the bank, with instructions to distribute that property. By the time the Reibor plaintiff served the bank again, the defendant's property had already been dispersed, and the bank again was in a position of not having any property of the defendant. The Reibor plaintiff argued that the bank

should have been obligated to restrain the defendant's funds that had been received after the first service. The Court disagreed, holding that if the PMAG is not received by the garnishee at a time when the garnishee holds the defendant's property, the PMAG fails and is void. If subsequently a further service of the PMAG is made when the garnishee holds property of the defendant, the restraint is valid.[1]

In agreeing with the result in Reibor, the Sixth Circuit very colorfully explained that a Rule B attachment

> can be likened to a fisherman's net cast into the flow of commerce to catch the defendant's assets. The plaintiff is the fisherman, it is the court's net, but the garnishee bank is forced to tend the net and report its catch, if any, within 20 days. Like the court in *Reibor*, we think the federal writ of maritime attachment is the equivalent of one cast of the net; if the fish are not running on the date of service, the net is returned empty to the court. If anyone is to be burdened with the job of staring at the water watching for fish, it should be the plaintiff and not the garnishee bank.

Union Planters Nat. Bank v. World Energy Systems, 816 F.2d 1092, 1098 (6th Cir. 1987).

---

[1] In Reibor, the term "after acquired property" was used to refer to the situation where *property* of the defendant that had come into the garnishee's possession (*acquired*) *after* a PMAG had been served that was unsuccessful in restraining any property. This terminology should be distinguished from, and not confused with, the situation in which property of a defendant comes into a garnishee's possession after a PMAG has successfully restrained property (also called "after acquired property"), in which case the later-appearing funds are also subject to the initial PMAG. *See, e.g.*, Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F.Supp.2d 305 (S.D.N.Y. 2004) ("a levy, once effective, remains effective for at least ninety days"), *later proceedings at* 2004 U.S. Dist. LEXIS 24651, *3-4 (S.D.N.Y. Dec. 7, 2004) (finding that Reibor did **not** stand for the proposition that "once process validly attaches to some property, it ceases to have efficacy as to subsequently acquired property...if, but only if there is a valid initial attachment of some property, then property falling into the hands of the garnishee thereafter may also be attached by the previously served process"); Metal Transport Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., 1991 U.S. Dist LEXIS 2355, *7 (S.D.N.Y. 1991); HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009, *17 (S.D.N.Y. May 4, 2005).

NYDOCS1/275778.1                     2

In the case at bar, however, the situation is dramatically different – at the time that the plaintiff served its PMAG on garnishee The Bank of New York on December 5, the bank did have funds of the defendant(s)[2] in its hands. Accordingly, the *res* and the PMAG were both in the bank's hands simultaneously and the funds were properly subject to the attachment.

The facts concerning the restraint of the subject funds are beyond dispute. This Court signed the Order of Attachment on December 1, 2006,[3] and the Clerk issued the PMAG in accordance therewith.[4] The order expressly provided, *inter alia* that

> following initial service upon any garnishee...supplemental service of the Process of Maritime Attachment and Garnishment may thereafter be made by way of facsimile transmission or other verifiable electronic means, including email, to each garnishes so personally served...service on any garnishee herein is deemed to be effective and continuous service throughout the remainder of the day upon which such service is made commencing from the time of such service [through][5] the next business day.

*See* Unger Declaration, Ex. 1. The Bank of New York was served by hand with, *inter alia*, the Verified Complaint, the Order of Attachment, and the PMAG on December 4, 2006.[6] The subject funds arrived at The Bank of New York at 7:47 a.m. on December 5,

---

[2] The parties have agreed, and the Court has Ordered, that the issue of whether either or both defendants had a property interest in the funds will be deferred to January 29, 2007, when a further hearing will be held, if necessary.
[3] See accompanying Unger Affirmation, Ex. 1.
[4] See accompanying Unger Affirmation, Ex. 2.
[5] It appears that the word "through" was inadvertently omitted from the text of the Order. CARGOBULK argues that the absence of this word limits the continuousness of the service to the end of the day (although this clearly was not the intent). Such argument is irrelevant, however, because (as set forth *infra*), service occurred on the bank when the subject funds were in its hands.
[6] See accompanying Unger Affirmation, Ex. 3.

NYDOCS1/275778.1                                    3

2006[7] and the bank was served with another copy of the PMAG later that day while the subject funds were still in the hands of the bank.[8] Once CARGOBULK initially raised the issue of whether the restraint on December 5 was valid, The Bank of New York was served again with the PMAG on January 2, 2007.[9] While admittedly the funds did not arrive in the hands of the bank at the very moment that a PMAG was served on it, the funds were still in the bank's hands when it was subsequently served with the PMAG a short time later. Accordingly the PMAG required the bank to hold the funds.

The current situation is on all fours with the facts in <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002) as well as numerous other decisions by this Court. LOSINJPLOV submits that there was no defect in the service of the PMAG on The Bank of New York in this case, but even to the extent, *arguendo*, there was a defect in service on the bank, <u>Winter Storm</u> holds that the later service of a valid PMAG properly restrains funds which may have not otherwise been subject to restraint under a previously served PMAG. <u>Id.</u> at 274-75 and n.7. As in this case, in <u>Winter Storm</u>, the length of the delay between the restraint and the subsequent service of a PMAG was only a few hours. In <u>Ulisses Shipping Corp. v. FAL Shipping Co. Ltd.</u>, 415 F.Supp.2d 318 (S.D.N.Y. 2006), a similar situation occurred, but the delay between the restraint and the later service of the PMAG was significantly longer: it was several weeks before the later valid service:

> Ulisses re-served each of the garnishee banks that are currently restraining FAL's property, rendering this argument [that the banks' restraint of the funds was invalid because there was no contemporaneous service of a PMAG] moot. Because FAL's assets were in the

---

[7] See accompanying Unger Affirmation, Ex. 4.
[8] See accompanying Unger Affirmation, Ex. 5.
[9] See accompanying Unger Affirmation, Ex. 6.

> garnishees' possession when Ulisses' later processes of attachment were served, the <u>Reibor</u> requirement is satisfied.

<u>Ulisses</u>, 415 F.Supp.2d at 328. In <u>Maersk, Inc. v. Neewra, Inc.</u>, 443 F.Supp.2d 519 (S.D.N.Y. 2006), the delay was longer still – approximately four months – but nonetheless, the Court held the later served PMAG validly restrained the funds that were still in the garnishee's hands at the time of service:

> <u>Winter Storm</u> controls this case. The only notable difference between the attachment in <u>Winter Storm</u> and the attachment here involves the length of time between the arrival of funds at the respective banks and subsequent service of process. In <u>Winter Storm</u>, subsequent service happened within hours; here, it occurred more than four months after restraint of Movant Sahani's funds. But the temporal distinction is immaterial. To validly attach an EFT, process and a *res* must coexist in the hands of the garnishee at a single moment in time. Little else is required.

<u>Id.</u> at 529 (internal quotations and citations omitted).

CARGOBULK also seems to argue that the Court's issuance of an Order, as here, that avoids the results of the <u>Reibor</u> rule is invalid. This argument is also wide of the mark. The Second Circuit, in <u>Winter Storm</u>, held that electronic funds transfers (such as wire transfers) are restrainable property subject to a Rule B attachment. <u>Winter Storm</u>, 310 F.3d at 273-276. If a PMAG is served before the wire transfer arrives at the garnishee bank, though, under <u>Reibor</u>, the funds would not be captured by the PMAG. Similarly, if the wire transfer was routed out of the bank before another PMAG could be served, then again under <u>Reibor</u>, the funds would not be captured.

Clearly, in order to capture a wire transfer, a maritime plaintiff would need to (a) have an incredible amount of inside knowledge as to the timing of wire transfers; (b) be extraordinarily lucky in serving a PMAG on the right bank just when the funds arrived;

or (c) come up with a more creative solution. With regard to option (c), some maritime plaintiffs attempted to serve and re-serve the PMAG on each target bank repeatedly throughout the day. Such a procedure is expensive for plaintiffs and causes great inconvenience to garnishee banks. As a consequence, over time maritime plaintiffs gradually reached *ad hoc* agreements with garnishee banks whereby the banks deemed themselves "continuously served" on any business day in which the bank was actually served with process, and many banks began to agree to accept service of PMAG's by fax or email. This was the situation in <u>Winter Storm</u>. Maritime plaintiffs and garnishee banks are free to make such agreements, and will be bound by them. Similarly, district courts may order garnishee banks to accept such reasonable terms to avoid "the absurdity" under <u>Reibor</u> of needing to continuously re-serve each garnishee bank with a PMAG in order to capture wire transfers. <u>Ulisses</u>, 415 F.Supp.2d at 328 (S.D.N.Y. 2006). Even under <u>Reibor</u>, an order which makes service effective for a short and reasonable amount of time is valid. <u>Reibor</u>, 759 F.2d at 267-68.

## CONCLUSION

In sum, that the PMAG did not "land" at The Bank of New York at the same instant as the funds is irrelevant, because (a) the funds were still in the bank's hands at the time it was served with the PMAG; and (b) the Court's order provided that the bank was deemed continuously served for a short and reasonable amount of time and required the bank to accept service of a copy of the PMAG by fax or by email (here, the bank accepted service via fax). The Court's order regarding continuous service and service of a copy of the PMAG by fax or email was valid and not in violation of <u>Reibor</u>.

Accordingly, the attachment should not be vacated and the funds should not be released on the basis that they were "after acquired property".

Dated: New York, New York
       January 10, 2007

                                FREEHILL HOGAN & MAHAR, LLP
                                Attorneys for Plaintiff Losinjka Plovidba

By: _____
    Michael E. Unger (MU 0045)
    Lawrence J. Kahn (LK 5215)
    80 Pine Street
    New York, NY  10005
    (212) 425-1900 / (212) 425-1901 fax